All right, the next case we're going to hear is Washington v. Pelligrini You can take your time, but Mrs. Spence will hear from you whenever you're ready All right, Mrs. Spence will hear from you whenever you're ready Good morning, and may it please the court, Renee Spence for Plaintiff Appellant Gary Washington In 1986 and 1987, defendants set about framing Mr. Washington for a crime he did not commit a murder for which a court has found him factually innocent. The defendants coerced witnesses into fabricating inculpatory evidence against Mr. Washington. They suppressed evidence that would have gutted the state's case, and they used the fabricated evidence to deprive Mr. Washington of his liberty for over 30 years. At summary judgment, Mr. Washington has presented significant evidence of the defendant's misconduct, and the question before this court is whether Mr. Washington is entitled to a trial on these claims. The district court improperly granted summary judgment, and this court should reverse for two reasons. First, the district court improperly applied collateral estoppel, which led to the erroneous dismissal of Mr. Washington's record when properly construed, would allow, demonstrates that there are genuine material disputes of fact as to all of Mr. Washington's claims, including his suppression and fabrication due process theories. A trial is warranted. As to collateral estoppel, there are four grounds, any of which the court can rely on, to justify reversal. First, the Maryland courts would not have barred Mr. Washington from relitigating the issue of Mr. Robinson's coercion. Was in the proceedings for the writ of actual innocence, was there a question about the findings from the earlier post-conviction proceeding where the court then said he was not credible? Was any issue preclusion raised in the writ of actual innocence proceeding? Yes. The state actually argued that Judge Peters was barred from re-evaluating this issue because of Judge Schwedt's 1999 order. And what Judge Biddle does in the post-conviction attorney, in two of the briefs that are part of the record, and they are located at JA 3763 through 3778, 3747 through 3761, is he says collateral estoppel does not apply. And that makes sense because of the way that the statutory schemes in Maryland are set up. I didn't see any finding by the court that addressed it. I think they mentioned it briefly and then never addressed it. And they also never declared innocence. Basically, all they did is they said there's a possibility of a different result. They didn't resolve that. And granted a new trial. So the question is, I'd be interested in hearing why Judge Schwedt's order, which is post-conviction, he looked the witnesses in the face, he heard their testimony, and made a conclusion, and entered a final order denying post-conviction relief. And that was appealed and affirmed. Now that was a final order, wasn't it? It's not a final order. Why not? Because the conviction has been vacated. No, it wasn't. It's a collateral proceeding. It was a civil proceeding of post-conviction relief. Yes. And that's a separate proceeding. And it had a final judgment. And you have to appeal final judgments. That's all. That's correct. You have to appeal final judgments. However, the effect of Judge Peters granting a motion for a new trial vacated the conviction, and therefore the post-judgment rulings that are tethered to that conviction lose preclusive effect. And multiple courts have found this. Yes. Go ahead. I want to hear the courts you're talking about that have addressed that. What authority is there? In a post-conviction proceeding. There is no Maryland state authority on this, as you see from the debriefs. But you can look at Seekers v. Alex, which is an Eastern District of Michigan case. Glenn v. City of Hammond. Donald v. Outlaw. These are all cases that... Are they district court cases? Yes, they are district court cases. And they are all cases where the court looked at the collateral proceedings. The post-conviction. And in some of those cases, there are multiple post-conviction proceedings where there are denials, and the appellate court affirms them. And even... That doesn't affect whether Judge Schweitz's order was final. Final, under almost every definition, is when there's nothing further to be done in that proceeding, and an appeal can be taken. An appeal was taken and it was affirmed. So what he did, sure, if he was going to grant relief, it would affect the criminal judgment. But it was a collateral civil proceeding, and it was appealable, and there was nothing more to be done. He denied relief, and the Court of Special Appeals back then affirmed. Now, the question is, are we just going to... It seems to me that you want to just disregard that whole proceeding as if it didn't occur. As it turns out, as evidence comes out later years, maybe he was wrong, but maybe not. But quite apart from it, he did make a finding, a fact. He took testimony, he heard the witnesses, and as you know, credibility questions like that are really things that the trial courts are, we defer to. Well, Judge Peters, while he did not rule on the question of collateral estoppel in the post-conviction... No, no, he made a finding that they were not credible. No, Judge Peters, in the writ of actual... Yes, he did not rule, yes, he did not rule on the collateral estoppel issue, but what he does is he goes ahead and makes the credibility finding for Otis Robinson. He is required to do it. If you look at Jackson v. State... He said that it raises questions of fact. So in Judge Peters' decision, he cites to Jackson v. State, and Jackson v. State discusses at length what is required for a trial judge when granting a new trial... But he didn't do it. All you have to do is read what he did. He said it created the possibility of a different result, and so he then granted a new trial. But in order to create a possibility of a different result, which in a criminal case would be the not guilty, or a mistrial, but a not guilty, Judge Peters had to assess the trustworthiness of the newly discovered evidence. Jackson v. State is very clear that newly discovered evidence, particularly when it comes... In all generalities, tell me what he did. What he did is he heard from Otis Robinson, and Otis Robinson gave substantially the same testimony that was in front of Judge... Did he make a credibility finding? He had to make a credibility finding. Did he make one? Yes. When he grants it, he has to make a credibility finding. That is the requirement. It does not use the word credibility, but the recantation is not... There couldn't be the possibility of a different result unless the court believed the recantation. Correct, because he is also required to consider... Because what other evidence did they have at the trial in the first place against Mr. Washington? Only the testimony... Absolutely. This was a pure eyewitness case. So is that... They had nothing else. Correct. Judge Sack, I was wondering... No, that's all. Go ahead. So I'm wondering about that. I mean, you know, it seems at least theoretically you could say in 2018, look, we got a bunch of versions of the testimony, you know, up for a period of time, and then we got a bunch of versions of a completely contradictory testimony later. If any jury had a witness who had said two different things, you know, for as consistently as this witness did, then there's no way you could expect that, you know, a jury to believe one or the other. So in theory, I can see that you could say there's a, you know, reasonable probability of a different result without saying, I believe the subsequent version of the testimony. But there was an issue you mentioned earlier that I wanted to explore with you. I don't, I think, I didn't see a finding of actual innocence, but I think, but I think the writ at least contemplates actual innocence. So what do we do if there was never something that said actual... Because if there was a finding of actual innocence, that would seem to say, I'm believing the later testimony. But there's... There is a later finding of actual innocence that we cite to in the reply. There is a later finding of actual innocence that we cite to in a reply in a 2024 proceeding with Mr. Washington that did not happen. The finding of actual innocence did not happen at the writ of actual innocence proceeding. But that, when we, when I am referring to that finding, I'm referring... It happened when? In 2024. It's cited in the reply, and we can supplement it with the actual opinion. By what court? By the Office of Administrative Hearings under the Maryland Walter Lomax Act. Is that the one by clear and convincing evidence? Yes, it's a clear and convincing evidence standard. And so, with... Just to get back, just to be clear, what Judge Peters found, he says, after the court went through this, the court clearly did not make the final assessment. What the court said is the court is left with the inescapable conclusion that multiple recantations of the uncorroborated testimony by the sole eyewitness in Petitioner's case have created a substantial possibility of a different result. And the court then ordered a new trial. Jackson v. State discusses merely recantation of impeaching evidence and impeaching evidence. Can you take what he wrote? Yes, the recantation... And the statute says he can order a new trial. That's part of the relief. Not on just the recantation. The full recantation is about the coercion. But even if the court is not persuaded as to the issue of whether these Judge Schrade's orders should have conclusive effect, there is a question of equities. Collateral stopping is an equitable doctrine, even when the elements are met, which we discussed in the brief, that the elements have not been met here. But to bind Mr. Washington to false testimony, particularly when, and to bind him to a 1999 order that did not have the full picture that Judge Peters... What we're doing is we're accusing the prosecution and the officers of misconduct and in fabricating and coercing evidence and creating a murder conviction. And the record is pretty thin on that when you go back and read back then. I've read all the records, the statements, the testimonies, and I didn't sense that the office were pushing everybody around. But forget that. We get to a point where the question... There is a recantation 10 years later pursuant to an investigation. The investigator comes and talks to this guy and he recants. So they now file a petition for post-conviction relief. And the judge then hears everybody and says, I don't believe in the recantations. There was enough evidence there and there's not no evidence, and denied relief. Now, that back there, the question is at that point, at that point in time, do we have evidence that the officers were acting inappropriately? So then you come to the actual innocence hearing, and the actual innocence hearing, Judge Peters hears the same type of evidence. And he says, well, this raises enough of a possibility that the jury has to decide the issue. I'm not... If he believed the recantation, he could accept it and declare actual innocence. He refused to declare actual innocence. He sent him to a trial for determining guilt or innocence. And that, of course, we know never happened because the state then... That's exactly right. He sent him to a trial to have a jury determine the credibility of Otis Robinson, which is what the district court is barring Mr. Washington. No, I'm talking about the actual innocence. Yes. Judge Peters sent Mr. Washington back to trial with no evidentiary restrictions, such that that evidence could be presented anew. I understand, but Peter's decision is not on trial here. What's on trial is Judge Schwait's judgment. And Judge Schwait actually took evidence and allowed all the parties to make the arguments they wanted. The recantations were on the table, and he made some conclusions. Now, we're not even talking about whether that is absolutely correct, because maybe evidence over the years comes out. But what we're talking about is whether the prosecutors or the officers prosecuted this case appropriately, whether they had probable cause to proceed, and whether they had enough evidence to proceed. And we're talking about a serious tort. And what Maryland courts say is that when you have these two rulings, and it is unfair, the equities are favoring Mr. Washington, because it's unfair to bind him to a ruling that does not have a complete picture. What Judge Peters hears is testimony from multiple people. Well, it's not a question of binding him to a ruling. The question is, are the officers exposed? In other words, the officers were told that they did not act improperly, that they had the evidence of the witness, two witnesses, actually one disappeared, so to speak, but of Robinson. And their notes were saying, well, you know, he said he saw what happened, but he won't tell us. And so the officers put that in there. And then they said, well, we really ought to find out who it is. And he comes back, and then he identifies Washington. Washington, of course, I think you make a pretty persuasive case that it was Thomas, whoever did that. But he was part of the group there, and sure, there could be mistakes. But we're talking about malicious prosecution and pursuing lawsuits inappropriately. And the question is, now you have a state judge makes findings of fact that he looks these people in the eye, hears the testimony, and he makes a conclusion that the recantations were incredible. And I don't know why that doesn't get some weight. That's a pretty serious thing. Yes, and vacating the conviction is a very serious thing. And what the defendants must explain is why collateral estoppel should apply when Maryland courts. Why was Mr. Washington awarded $3 million and by whom? Based on the finding of factual innocence that he was erroneously convicted of statutory compensation. And it was in part based on that evidence of Otis Robinson. And so what the defendants are not able to answer is why the defendant should get the benefit of their misconduct and also why Maryland courts allow this inconsistency to arise based on the structure of the uniform. What inconsistency? The difference between the post-conviction, the 1999 order, and the 2018 order. Your point there is that the Maryland law seems to let someone do a do-over. I mean, maybe it's a slight, it's a different, the legal outcome is different, but the underlying claim is the same. And your point, I think there is, it'd be weird if Maryland lets you have a do-over. That's my word. Well, Maryland, I'm sorry. No, no, no. And for us to kind of let the prior holding have preclusive effect. I mean, just to make some good points, I mean, the actual statements in 2008 are kind of different statements. So, I mean, this is kind of tough. Can I ask you, I know where the red light's gone, but obviously we need to, he was awarded $3 million and benefits and a lot of things. That's a good success. Of course, he lost 30 years, which is a terrible thing. Is there a collateral source rule? In other words, has he been fully compensated for his loss now? For under the statutory, the state statutory regime, there is an algorithm by which compensation is calculated, but it would be our, it's our position that he has not been fully compensated because- He got the median income in Maryland on a daily basis awarded to him. And he got benefits and he got his medical care and he got any other damage that they could think of, which added up to roughly $3 million. My question is, what other damage would you be asking? It's not just money, it's accountability, which is what the- Well, I'm asking for damage. Are you asking for any more damages? Yes, we are asking for more damages. What damages? It would be monetary damages, but there is also a public accounting for what happens in Mr. Washington. I'm asking, what other damages? And you say there are other damages, and I'm asking you what? For intentional infliction of emotional distress? Yes, for intentional, yes. The intentional infliction of emotional distress is part of the, is one of the bases for the damage. Wouldn't you also, I mean, I assume you, I don't know if punitive damages are recoverable in those claims. I mean, I would think you would say some intangible damages beyond what are available by the statute. I would, you know, a statute can provide certain remedy. I don't know that statutory calculations are the same as tort law. I mean, there may be an offset. It may be that sort of thing, but anyway, that's not really before us right now. That's for the court to maybe, if there was a basis to dismiss because there's no recoverable damages, that'd be one thing right now is whether you get, you know, you're kind of stopped by virtue of the issue preclusion, right? Correct, and you're right as to the punitive damages. Actually, that's the narrow issue before us. I mean, we've gone on a lot of things, but the narrow issue is whether Judge Gallagher's reliance on collateral estoppel was appropriate. Right, where the district court was required to do what Maryland courts would do. Okay. Thank you, Your Honors. I think you have some rebuttal coming back. Thank you. Mr. Redman. May it please the court. I'm Michael Redman on behalf of Appellee's Officer Pellegrini, Officer Rickwear, and the estate of Officer Feltek. We are here today not because Mr. Washington was convicted of murder in 1987, nor are we here today because Mr. Washington was able to get that conviction vacated in 2018. We are here today because in 1999, Mr. Washington filed a separate civil suit in a Maryland state court where he alleged that the appellee officers violated his constitutional rights by fabricating evidence and coercing Otis Robinson into testifying as to that fabrication. In 1999, after a full evidentiary hearing, the result of that civil suit was that fact finder, Judge Alan L. Schwaite, found that the evidence presented was insufficient to support those allegations by a preponderance. Judge Swaite's factual finding was affirmed on direct appeal by a three-judge panel of the Appellate Court of Maryland, and that 1999 factual finding has never been vacated, overruled, or called into question in any way. Yet, 20 years later... It was called into question by what you were just getting ready to talk about, the decision 20 years later. Okay. 20 years later, in 2019, Mr. Washington filed a second civil suit, this time in federal court, making the exact same factual allegations of constitutional violations against the appellee officers. Washington asked the district court to allow a jury... You're not talking about it. I'm telling you, it was called into question by the later finding by the state court that was inconsistent with the prior finding, and so it applies. I'll jump right into that, Your Honor. You just can't say that that doesn't exist, or pretend like it doesn't exist. So go ahead and... I certainly do not mean to pretend that it doesn't exist, Your Honor. I plan to tell you exactly why it does not call it into question. It is not inconsistent with it. Washington's first argument is that the 2018 order from Judge Peters that got him out of prison contradicts or conflicts with Judge Schweitz' 1999 judgment, but that is simply not true. In 1999, Washington needed to prove by a preponderance of the evidence that the police officers coerced Robinson and fabricated the evidence against Washington, that they violated his constitutional rights, and he failed. And then 10 years later, in 2009, the Maryland General Assembly passed a new law, Section 8301, that made it a whole lot easier to get a conviction overturned, because instead of having to prove a constitutional violation, all it requires is, quote, newly discovered evidence that, quote, creates a substantial or significant possibility that the results may have been different, end quote, if the jury had the newly discovered... Does that require actual innocence? No, it does not require actual innocence. It does require that... I believe there's a requirement that the evidence speak to innocence in some way, but it doesn't require a finding of actual innocence in order to get a new... It merely requires that there is... And the evidence here does speak to actual innocence, because the evidence here is the recantation of the sole witness at trial against Mr. Washington. Yes, that is an entirely different question of... Whether or not he's innocent is not what was determined in 1999 by Judge Schwait. That was whether or not... So let's assume... I mean, I think that is fair, that the question is different. They're related, right? I mean, they're certainly related. They go to the testimony and the recantation. It probably is accurate to say it's not the exact same finding. You must have thought it was pretty close if you tried to argue issue preclusion in 2018. Not you. It may have been you, but apparently there was an attempt to argue that by the state at that point, but that's really beside the point. Here's, I guess, what I wanted to... There's a lot of cases that say orders pre-conviction are essentially rendered invalid by a subsequent motion for a new trial. There's some district court cases that your colleague cited that say post-conviction orders are also because they're so connected with the conviction. Is there... Do you have a case in a situation like this that helps you, a post-conviction relief finding, where there was a later grant of a new trial where issue preclusion was permitted? Your Honor, we do not have a case directly on point. This is a question of a first impression. Can I ask you a... That would be certainly a perfectly reasonable course of action, but I don't think we need to because Maryland State... Sorry. I have a follow-up. If you're right that that issue is binding on future litigation of that same issue in other settings, what if you had retried... What if the state had retried Mr. Washington and Mr. Robinson gets up and is called to say, I never said that? Would that be... Would the state be able to get up and say, hey, you can't do that. This issue's already been decided? I don't think so because there are different considerations with a criminal trial and constitutional rights about that. But more than that, again, it's a different question, a different standard of what there has to be proven when there... This is not a legal issue. This is a factual finding, whether Mr. Robinson was credible. You're saying that fact has been determined, and so it can't be relitigated. If he was retried again, Mr. Robinson's credibility would be at issue. And why would you say issue preclusion only stops in a tort case or a 1983 case and not in a criminal case? I think the real issue that is precluded is whether or not the officers coerced Mr. Robinson and... Maybe that's your argument. I thought it was more narrow. I thought it was a factual... I thought what the judge... Is it... I forget that... I thought that what you were saying was collaterally decided that is a stop from being relitigated is that he was deemed to be uncredible, incredible in his testimony. The determination that he as the fact finder made was that, yes, this testimony is incredible because of the impeaching prior statements and things like that. However, the actual holding of that case, the actual factual finding was that there had been no constitutional violation, that they had not coerced or fabricated these things. And these are the exact same allegations that were found and are not found to be supportable by that fact finder. Those are exactly the same things. So your argument is not that what's precluded is the limited factual finding of incredible testimony. It's the legal implications of that on constitutional violations? The actual finding of Judge Swate of the Circuit Court for Maryland was that Mr. Washington had not met his burden, the preponderance, that he had not proved that there was any constitutional violation, that there was any coercion or any fabrication. That is the actual factual finding. Why he found that is because a subsidiary factual finding that I don't find is credible. Both should be precluded. I'm going to switch gears a little bit. Your colleague makes the point, and you make it too, that Maryland passed a statute permitting this writ of actual innocence. It may be a lower bar. It may be a different bar. I'm not really characterizing it. But it just strikes me as strange that Maryland would permit the same sort of claim, same factual basis for a claim. It seems like it's undeniably permissible under Maryland law. Mr. Washington wins, gets a new trial, and that that 2009 case would bar it. This is such a weird case. It's not like any that we found. You said it was kind of a new animal, so to speak. But it seems remarkable that Maryland would grant him a new trial, and then an earlier finding inconsistent to some extent with that decision would somehow bar the civil claim. Well, I think that it's important to note that the statute, the newly passed statute in 2009, set out that it just had a much lower bar, the substantial or significant possibility that the results may have been different bar, which Maryland courts have interpreted that as being less stringent than probable. That's McGeever State, 449 MD at 510. If he was by law incredible, you couldn't say there would be a substantial likelihood of a different result, could you? Well, it's kind of a different determination, because what this is saying is not, you're not judging. I mean, how could Judge Peters say there was a substantial likelihood of a different result if he, I don't know if he's a he or he or she, didn't believe there was a question about whether or not Mr. Robinson was credible? Because he wasn't making a credibility determination himself. If he thought he was incredible, he couldn't have found that. I know he didn't say, I hereby find him credible. But how could he say there is a reasonable likelihood of a different result? It's not only a possibility, not a likelihood. It is really a... He said it seems irrefutable that the outcome of Appellant's trial hinged completely on the credibility of the 12-year-old Otis Robinson. And it is a meta-determination, if you will. He is not determining, he is not making a credibility judgment. Yes, if it was completely outlandish, he could say, yes, that is not going to be... But there is a significant range in there where the 1999 Judge Schweitzer, he was making the factual determination. I decide, is it enough to create preponderance of the evidence? He decided, no, it wasn't. How does your argument serve, isn't collateral estoppel an equitable doctrine? How does your argument and what you're trying to do here serve the purposes of equity and fairness? I'll change Judge Quattlebaum's word, weird, to fair. How is this fair? Because when you're weighing the equity of imposing collateral estoppel, it cannot be just that we don't like the result that happened before. To weigh... I don't think that's what you're arguing. I'm sorry, Your Honor, I didn't mean to mischaracterize that. But to weigh the equities here, you would have to weigh what Washington loses if we bind him to the fully adjudicated civil factual determination, namely getting a second bite at the apple, versus what the defendant officers lose, namely having to defend themselves 25 years after the first civil decision, after decades of forgetting, after evidence disappearing for decades, and even after one of the officers dying, Your Honor. I'm sorry, Your Honor, you have a question. Go ahead. No, I think that's... Look, those are challenging things. That's why when this happens, oftentimes there's not prosecutions, retrials. Sometimes it's because they're deemed innocent, sometimes because you can't prove the case due to witnesses being either gone or unavailable or not having memory. You're certainly right that defending the claim may be difficult, but prosecuting the claim may be difficult. Mr. Washington was in jail for a long time, and the state of Maryland has declared him actually innocent. I didn't make the 1983 statute, but it's there. And so, I mean, there may be some challenges to the officers. I think you're fair in characterizing them, but there's some equities on the other side. And the... Let me ask you something. Yes, Your Honor. This statute, the actual innocence statute can have the functional tendency of overruling an earlier post-conviction relief claim. In other words, it is another form of post-conviction relief on a lower standard. And so, if you have one post-conviction relief denied, and maybe that's because the higher standard was not satisfied, then you come under the statute and you have a lower conviction standard and you can get a new trial. What does that do to the first post-conviction determination? It depends on the factual determinations that were made. Legally, what's the effect? Yes, and if those factual determinations are questions about reviewing the trial itself, of what happened there, then there's a much better argument that collateral estoppel shouldn't apply in that situation because that has now actually been vacated in situations like that. But when it is a de novo determination, a new factual determination, like we have here in the 1999 Schwate decision, that is because Maryland courts treat these things as separate civil cases, and they make it separate from the criminal case. It is its own separate civil case with separate civil factual determination. That is... It's basically analogous to our habeas process and all the post-conviction things, but Maryland comes along and passes a new statute, which has the effect of permitting the defendant to have a new trial, whereas I thought post-conviction relief was designed to do that. It was at different routes to different methods of getting the same relief, however, of getting a new trial. Doesn't that raise some legal difficulties in what is the legal effect of the post-conviction relief determination when you are allowed to try it again under a lower standard in the innocence? No, Your Honor, because in this instance, and obviously collateral estoppel is always a case-by-case basis, however, in this instance, you are not actually addressing the same question, just in a different standard. You are addressing two different questions. The first one, it was, was there coercion, was there fabrication, was there a constitutional violation? On the second one, Mr. Washington's lawyer in 2018 or 2016, when they were adjudicating the rig of actual innocence thing, they actively argued exactly what I'm arguing today, and this is reproduced on page 25 of the appellate's briefs, and it's at joint appendix 3750. Unlike in the post-conviction proceedings, which require proof that the officer coerced Robinson to lie in court, all that is necessary here to grant relief is for this court to find Robinson's recantation is newly discovered evidence, regardless of the reason he wrongly or mistakenly or incorrectly or falsely identified defendant Washington as the shooter at trial. While a mere recantation by Robinson was insufficient to permit post-conviction relief previously, it's sufficient now pursuant to the rig of actual innocence. So, I hear you that it's a lower standard, and so they're not answering, maybe that is a good response to the claim that the 2018 decision overrules it, but regardless, Maryland has permitted that. The conviction is now gone, and I grant you if you go through the elements of issue preclusion, I'm trying to figure out where there's not issue preclusion, and the only place I can see is maybe the validity of the judgment, and I grant you it hasn't been specifically overturned on appeal. It was affirmed, but does somehow a subsequent grant of a new trial, just because of the relationship of that 2009 proceeding, does it make it invalid? Yeah, there's no cases that talk about this, and then I guess the second point would be, and I'll let you respond, is even if they're all satisfied technically, do we have an equitable situation like Judge Thacker was talking about, where just given the circumstances here where where Mr. Washington was granted a new trial, it would be inequitable to preclude him from putting on that evidence and at least making his case? No, your honor. Well, sorry, let me address the first question first, that there is, because there's nothing that overrules or vacates the... I agree. That doesn't necessarily mean it's still valid if the thing that it was connected to has been over-vacated. And that's exactly the question, the connection. What is it that makes, in other contexts, a post-conviction relief sometimes be no longer valid? It is because you are directly reviewing, even if not on actual direct appeal review, you are often using the post-conviction relief avenue to directly review what was done at trial. And in situations like that, yes, it makes sense that that disappears, that becomes invalid. When, however, you are making new factual determinations, when you are presenting evidence and you are in any other civil trial and trying to prove that by preponderance of the evidence, that should be treated like any other civil trial and have issued collateral estoppel in exactly the same way. And that is a big part of the equity of it as well, is this is, it's not just equity, isn't just the court decides they would like it one way or another. It is a matter of what is fair as a process as a whole. And in the situation here, there are undoubtedly balanced equities on both sides to be balanced. And the trial court has made a determination of what is fair or not fair. And she said it's, to weigh it at, it would inevitably be more, it would unquestionably be a fuller and fairer opportunity to try this issue in 1999, only 10 years out than it is now 35 years out. Okay, we got that. Okay. And with that, the appellee officers would ask this court to affirm. It is not that Maryland decided to make it a whole lot easier to get a conviction overturned. It was specifically designed, and this, the appellee's brief, sorry, defendant's brief refers to Hawes v. State, which discusses the difference between the Uniform Post-Conviction Procedure Act and the writ of actual innocence. The writ of actual, granting a new trial based on newly discovered evidence, as Jackson v. State talks about, is about serving the ends of justice. This is to make sure that they get it right, which is also what collateral estoppel is concerned about. That equitable consideration is about permitting re-litigation, even when the there is a concern that there is going to be an inequitable administration of the laws. And that is what happens here. Yes, it is true that the defendants do not remember this, or the prosecutor doesn't remember each and every detail, but that is what happens when people are wrongfully convicted. It takes decades to unwind the misconduct. They should not get the benefit of this misconduct. When courts have looked at these types of cases and weighed the as they did in evidence, didn't the, whatever the second court was, find that Robinson was the sole eyewitness to the crime and amounted to the State's entire case, that's why they couldn't retry it. They had no case. It didn't matter whether they forgot this, that, or the other, or didn't have documents. Their entire case, according to the later opinion, rested on, well, and according to the record, rested on Robinson. They had no case anymore. They did not have a case anymore, but here, even the equities in favor of Mr. Washington being able to present it to the civil jury, because it's a fuller record, but also where they're, in Evans, in Gilliam, in Bermudez, which is another case, Your Honor, in the Second Circuit, where they found that, on substantially the exact same facts, there's a habeas petition, there are, its appeal is affirmed, the post-conviction is denied, and then there comes along, on the same evidence, a granting of a new trial for newly discovered evidence that was previously rejected, and the court found that the- Was the Second Circuit case, is it Bermudez? Bermudez. Was the basis of, how was that, remind me how that was, I think they decided that on equities, is that right? They did ultimately decide it on the equities. They said given the history of the case, which is very similar to Mr. Washington's case, where there is a finding of innocence, I believe the state conceded innocence at that point, that he should not be barred from re-litigation, but even then, they didn't think, they didn't say that collateral estoppel would otherwise be a bar, if not for the equities. But there was a concession of innocence, and it was based on equity and not the absence of issue preclusion. They never find that their issue preclusion should even apply, but it's similar to what this court did in Gilliam v. Seeley, where- I think Judge Thacker wrote that opinion, so my memory of that was that involved a ruling before the judgment. That involved the reading of North Carolina, the North Carolina law with the fraud exception, but there is a footnote where it questions whether or not collateral estoppel should even apply in Section 1983 cases, because it runs afoul of the thought process. But the issue in Gilliam was the ruling that, for which issue preclusion was sought, was a pre-conviction ruling. And so it's pretty established, I think, that all the judgments and orders leading up to a conviction are undone. Here we have a post-conviction order, and I understand your argument, but it is a different situation. It is on different footing, but you can also look at Glenview City of Hammond, which speaks to Your Honor's concern about the fact that it's not directly reversed. Even in Glenview City of Hammond, the post-conviction or the collateral tax had not been directly reversed, but the conviction being vacated meant that those post-judgment rulings did not have preclusive effect. And Judge Peters did, like Judge Shwait, hear from Otis Robinson. He was able to assess that testimony in real time and have a fuller picture of what happened. In addition to hearing from Otis Robinson, he heard from two witnesses who identified an alternative suspect who had Thomas Pellegrini was being currently sued for substantially the same misconduct of suppressing evidence and coercing a witness. And again, this collateral estoppel is not, Burkett talks about collateral estoppel, is not concerned about the judgment. It is primarily concerned with the factual findings. And here, Mr. Washington should be permitted to present these factual, these facts to a civil jury because a Maryland court wanted him. Judge Peters said that he could. Judge Shwait's decision was presented to Judge Peters? Judge Peters was aware of, yes. I mean, was it actually presented and argued to Judge Peters that he was bound by Judge Shwait? That is what the state argued. And Judge Peters reviewed it and said, I'm going to go ahead and make my decision because I'm allowed to make this decision because this is what Maryland empowers me to do, to put Mr. Washington in the position of a new trial where he is not, where it, as if the party, no trial had ever happened. And so the summary judgment record is rife with genuine disputes of fact that a jury must decide. And the defendant should not get the benefit of their misconduct by invoking a technicality to bar full and fair consideration of what happened to cause his wrongful conviction. The inequitable and erroneous application... Turn that light on. Oh, sorry. I saw the numbers keep going down. I'm sorry. We don't give tickets. We first give warnings. Thank you, Your Honor. Very well. We'll come, we'll adjourn for the day and come down and greet counsel.
judges: Paul V. Niemeyer, Stephanie D. Thacker, A. Marvin Quattlebaum Jr.